JAMES N. DUGGINS, JR. v. NORTH CAROLINA STATE BOARD OF CERTIFIED PUBLIC ACCOUNTANT EXAMINERS

No. 87

(Filed 24 January 1978)

1. Accountants § 1 — accountancy — regulation by State

The practice of accountancy — a profession or calling requiring knowledge and skill — is subject to regulation by the State.

2. Accountants § 1 — certification of CPA — experience requirement — rules promulgated by Board — no enlargement of statutory requirement

Rule (9)(c)(1) of the Board of CPA examiners which sets forth the experience requirements for certification does not enlarge the experience requirement of G.S. 93-12(5) in excess of the Board's authority, since the statute, like the rule, requires that an applicant for certification who relies upon two years' experience on "the field staff" of a CPA must have worked under a CPA *in public practice.*

Duggins v. Board of Examiners

3. **Accountants § 1— public practice of accountancy—definition**

A certified public accountant is engaged in the public practice of accountancy if he holds himself out to the public as an accountant prepared and offering to perform any and all the services enumerated in G.S. 93-1(5), that is, the services ordinarily rendered by one whose profession is accountancy.

4. **Accountants § 1— licensing of CPA—experience requirement—supervision of CPA in public practice of accountancy**

Plaintiff's contention that the range of experience contemplated by G.S. 93-12(5) before licensing as a CPA will necessarily be acquired by one working with any CPA regardless of the nature of his work or specialization is insupportable, since, to achieve the statutory purpose that only competent and experienc..d applicants be certified, G.S. 93-12(5) must be interpreted as requiring that an applicant's experience not only be received under the supervision of an accountant but that it be in the public field of accountancy.

5. **Accountants § 1— licensing of CPA—experience requirement**

The requirement that an applicant for certification have two years of experience under the tutelage of an accountant engaged in the public practice of accountancy is rationally related to the legislative purpose of ensuring that only an applicant qualified and prepared to enter the public practice by himself be certified.

6. **Accountants § 1; Constitutional Law § 20.1— certification of CPA—experience requirement—no violation of equal protection clause**

Plaintiff's contention that G.S. 93-12(5) which sets forth the experience requirements for licensing as a CPA is unconstitutional on its face because it violates the equal protection clauses of the federal and state constitutions is without merit, since the classification of applicants for CPA certification into two groups, those with two years' experience with a CPA in public practice and those without, is reasonably related to the purpose of the legislature, which is to certify only qualified applicants, and the classification is not invidiously discriminatory.

7. **Accountants § 1; Constitutional Law § 20.1— certification of CPA—failure to meet experience requirement—statute constitutionally applied**

Plaintiff's contention that G.S. 93-12(5) and Rule (9)(c)(1) were unconstitutionally applied to him because his experience working under a lawyer who was also a CPA was exactly the same as that which an applicant working with a CPA in public practice would receive is without merit, since the equal protection clauses of the state and federal constitutions are not violated by mere "incidental individual inequality," and the same rule which disqualified plaintiff from certification as a CPA would disqualify all other lawyers similarly situated.

ON petition for discretionary review of the decision of the Court of Appeals (25 N.C. App. 131, 212 S.E. 2d 657 (1975)), which reversed the judgment of *Bailey, J.*, entered at the 7 July 1974

Session of WAKE Superior Court, docketed and argued as Case No. 16 at the Fall Term 1975.

Petitioner-appellant, James N. Duggins, Jr. (Duggins), graduated from the University of North Carolina School of Business in June 1965, with a major in accounting. In May 1965 he "passed satisfactorily" the examination given by the State Board of Certified Public Accountant Examiners (Board). However, in addition to passing this examination, at that time N.C. Gen. Stats. § 93-12(5) (1965) also required that an applicant for a certificate of qualification to practice as a certified public accountant (CPA) "shall have had at least two years' experience on the field staff of a certified public accountant or a North Carolina public accountant in public practice, or shall have served two or more years as an internal revenue agent or special agent under a District Director of Internal Revenue or at least two years on the field staff of the North Carolina State Auditor under the direct supervision of a certified public accountant and shall have the endorsement of three certified public accountants as to his eligibility."[1] Advanced degrees in economics or business administration may be substituted for one year of experience. The statute authorized the Board to permit persons otherwise eligible to take its examination and to withhold certificates until such persons shall have had the required experience.

In August 1965 the Board notified Duggins that his certification was being held "in suspense" until he had acquired the necessary experience and submitted the proof required by rule (9)(c)(1), Section II, Rules of the Board:

"Each applicant must submit proof, acceptable to the Board, that he has had:

"(1) AT LEAST TWO YEARS' EXPERIENCE ON THE FIELD STAFF OF A CERTIFIED PUBLIC ACCOUNTANT IN PUBLIC PRACTICE OR A NORTH CAROLINA PUBLIC ACCOUNTANT IN PUBLIC PRACTICEE." (Emphasis Supplied.)

---

1. By 1975 N.C. Sess. Laws, ch. 107 and 1977 N.C. Sess. Laws, ch. 804, the General Assembly rewrote the second sentence of the second paragraph of G.S. 93-12(5) (1965). These revisions, however, do not affect Duggins' right of certification. See N.C. Gen. Stats. 93-12(5) (Cum. Supp. 1977).

"(2) Or, shall have served two or more years as an internal revenue agent or special agent under a District Director of Internal Revenue.

"(3) Or, shall have served at least two years on the field staff of the North Carolina State Auditor under the direct supervision of a certified public accountant.

"(4) A master's or more advanced degree in economics or business administration from an accredited college or university as provided in Rule (9)(b)(2) may be substituted for one year of experience."

Duggins' file remained in suspense until 20 December 1972. In the meantime, Duggins graduated from the University of North Carolina Law School in the spring of 1968. In August 1968 he passed the North Carolina Bar Examination and was licensed to practice law in this State. During the summer months of 1966 and 1967 he worked a total of 939 hours as a staff accountant for a firm of certified public accountants engaged in public practice in Durham, North Carolina. In the fall of 1968 Duggins joined the law firm of Smith, Moore, Smith, Schell & Hunter of Greensboro. There he worked under the direct supervision of one of the partners, Richard J. Tuggle, a lawyer and a CPA in good standing.

For more than four years Duggins spent over fifty percent of his time working on tax accounting matters under Tuggle's supervision. In this work he accumulated over 9,000 hours in the preparation of individual, corporate, and fiduciary income tax returns, state inheritance and federal estate tax returns, and in preparing tax protests; in making detailed analysis of financial information, verifications of financial transactions, books, accounts, and records; and in representing taxpayers at the agent level, conference level, and in the appellate division of the Internal Revenue Service.

On 20 December 1972 Duggins applied to the Board for his license as a CPA. His application, which recited his experience as detailed above, was supported by an affidavit from Mr. Tuggle. Upon receiving notice that the Board intended to deny his application on the ground that he had not acquired the experience

required by G.S. 93-12(5), Duggins requested a public hearing. At this hearing on 26 May 1973 Duggins testified to the facts summarized above. In a decision dated 21 August 1973, the Board denied Duggins' application. In addition to the facts set out above, the Board found as a fact "that the sole reason the Board rejected [petitioner's] application . . . is that he has been employed under the supervision of a lawyer who is also a CPA and not in the public practice of accountancy."

The Board concluded as a matter of law that "being an employee of a law firm [and] working under the supervision of a lawyer who is also a licensed certified public accountant not in the public practice of accountancy does not meet the experience requirements of the licensing statute and rules of the Board." Additionally, the Board noted that its administrative interpretation of G.S. § 93-12(5) had long been that "employment by a licensed certified public accountant engaged in the practice of law is not experience which would qualify an applicant for licensing by the Board as a certified public accountant."

Upon Duggins' appeal to the Wake County Superior Court, Judge Bailey reversed the Board's decision and directed it to issue a certificate to Duggins. The Board appealed this ruling to the Court of Appeals, which held that the Board's interpretation of G.S. 93-12(5) and its decision were in all respects proper. We granted Duggins' petition to review that decision.

*Daniel W. Donahue for petitioner appellant.*

*Allen, Steed and Pullen, P.A., by Lucius W. Pullen and D. James Jones, Jr., for respondent appellees.*

SHARP, Chief Justice.

This appeal presents three questions: (1) Is Rule (9)(c)(1) of Section II of the Rules of the Board of Certified Public Accountant Examiners (Board) consistent with N. C. Gen. Stats. § 93-12(5) (1975) and thus within the Board's rule-making authority? (2) If so, are the statute and rule prima facie constitutional? (3) If so, have the statute and rule been discriminatively applied to appellant in violation of the due process and equal protection rights guaranteed him by the Fourteenth Amendment and by N. C. Const. art. I, § 19?

[1]   As Duggins concedes, the practice of accountancy — a profession or calling requiring special knowledge and skill — is subject to regulation by the State. In the exercise of its police power, for the purpose of protecting the general public from unqualified and inexperienced accountants, the General Assembly enacted N. C. Gen. Stats., ch. 93 (Chapter 93). *See State v. Ballance,* 229 N.C. 764, 51 S.E. 2d 731 (1949); *State v. Scott,* 182 N.C. 865, 878, 109 S.E. 789, 797 (1921); 2 Strong's N. C. Index 2d, *Constitutional Law* § 12 (1967). Section 93-12 of Chapter 93 (G.S. 93-12) created the Board and, *inter alia,* authorized it to make rules for the examination of applicants seeking certificates of qualification as certified public accountants, to conduct such examinations, and to issue certificates to applicants having the qualifications specified in G.S. 93-12(5). In addition to requirements of citizenship, residence, age, character, and education, this statute specifies at least two years of practical experience, which may be obtained in several ways.

Pursuant to its rule-making authority, the Board promulgated Rule (9)(c)(1) to implement the alternative experience requirements of G.S. 93-12(5). The first alternative specified in the statute is proof by the applicant that he has had "at least two years' experience on the field staff of a certified public accountant or a North Carolina public accountant in public practice." It is this requirement which Duggins claims to have satisfied. As the Board construes this provision the phrase "in public practice" modifies both "a certified public accountant" and "a North Carolina public accountant." Under this construction therefore, whether an applicant's experience be acquired on the field staff of a certified public accountant (C.P.A.) or of a North Carolina public accountant, the accountant must have been *in public practice.*

It is Duggins' contention that G.S. 93-12(5) requires only "the North Carolina public accountant" (not the C.P.A.) under whom an applicant has worked for two years to be in public practice. Duggins does not contend that Mr. Richard J. Tuggle, the C.P.A. under whose supervision he had worked "more than 50% of his time" for over four years, is engaged in the public practice of accountancy. Mr. Tuggle, in addition to being a C.P.A. in good standing, is a lawyer and a partner in a large law firm engaged in the general practice of law. He, like Duggins, is an attorney specializing in tax matters. Their work for the firm "covers the full gamut of tax-related matters."

[2] The first question we must consider, therefore is whether the Board's Rule (9)(c)(1) enlarges the experience requirement of G.S. 93-12(5) in excess of its authority. We conclude that it does not. Accordingly, we affirm the decision of the Court of Appeals that G.S. 93-12(5) requires that an applicant for certification who relies upon two years' experience on "the field staff" of a C.P.A. must have worked under a C.P.A. *in public practice.* This construction effects the intent of Chapter 93 as manifested by both its language and legislative history. Moreover, this construction is the Board's long-standing interpretation of G.S. 93-12(5) and is therefore entitled to "great consideration." *MacPherson v. City of Asheville,* 283 N.C. 299, 307, 196 S.E. 2d 200, 206 (1973).

In attempting to ascertain the legislative intent — the task of the judiciary — courts resort first to the words of the statute. *Stevenson v. City of Durham,* 281 N.C. 300, 188 S.E. 2d 281 (1972). In interpreting an ambiguous statute, "the proper course is to adopt that sense of the words which promotes in the fullest manner the object of the statute." 73 Am. Jur. 2d *Statutes* § 159 (1974). To determine the sense of the crucial phrases used in the experience requirement of G.S. 93-12(5) which is applicable to Duggins we must look to G.S. 93-1, which declares that the following terms are defined as follows:

"(3) A 'certified public accountant' is a person engaged in the public practice of accountancy who holds a certificate as a certified public accountant issued to him under the provisions of this Chapter.

"(4) A 'public accountant' is a person engaged in the public practice of accountancy who is registered as a public accountant under the provisions of this Chapter.

"(5) A person is engaged in the 'public practice of accountancy' who holds himself out to the public as an accountant and in consideration of compensation received or to be received offers to perform or does perform, for other persons, services which involve the auditing or verification of financial transactions, books, accounts, or records, or the preparation, verification or certification of financial, accounting and related statements intended for publication or renders professional services or assistance in or about any and all matters of principle or detail relating to accounting procedure and systems, or the recording, presentation or

certification and the interpretation of such service through statements and reports."

[3] From the foregoing definition it is clear that the term "certified public accountant," as defined in Section (3), incorporates the concept of public practice. A certified public accountant is engaged in the public practice of accountancy if he holds himself out to the public as an accountant prepared and offering to perform any and all the services enumerated in Section (5) above, that is, the services ordinarily rendered by one whose profession is accountancy.

We find nothing in the language of G.S. 93-12(5) to displace the definition in G.S. 93-1 and the concept of a certified public accountant as a person engaged in the "public practice" of accountancy. As Judge Morris succinctly stated in the opinion of the Court of Appeals, "the phrase 'in public practice' as used in that portion of G.S. 93-12(5), which reads 'two years' experience on the field staff of a certified public accountant or a North Carolina public accountant 'in public practice' is equivalent to the phrase 'public practice of accountancy.'" *Duggins v. Board of Examiners*, 25 N.C. App. 131, 134, 212 S.E. 2d 657, 660.

The requirement that an applicant's experience be on the "field staff" of a C.P.A. further evidences the legislative intent that the accountant under whom he serves his apprenticeship be in public practice. Although the term is not defined in the statute, "field staff" is a common expression understood alike by both laymen and accountants. The word *field* "has been defined as meaning the sphere of practical operation, as of an organization or enterprise; also the place or territory where direct contacts, as with a clientele, may be made or first-hand knowledge may be gained; sphere of action or place of contest, either literally or figuratively; hence any scene of operations or opportunity for activity." 36A C.J.S. at 390 (1961).

Duggins asserts that "it is manifestly obvious that the administrative differentiation between C.P.A. aspirants studying under Certified Public Accountants 'in public practice' and those not bears no reasonable, rational relationship to the one constitutionally permissible state (sic) objective of Chapter 93 . . . *i.e.*, to insure the capability and fitness of an applicant to practice accountancy." Thus, he contends that a C.P.A. need not be in public

practice for his "field staff" to obtain firsthand knowledge of "professional services or assistance in or about any and all matters of principle or detail relating to accounting procedure and systems. . . ." G.S. 93-1(5).

[4] The proposition that the range of experience contemplated by G.S. 93-12(5) will necessarily be acquired by one working with any C.P.A. regardless of the nature of his work or specialization is insupportable. As the Board recognized when it promulgated Rule (9)(c)(1), to achieve the statutory purpose that only competent and experienced applicants be certified, G.S. 93-12(5) must be interpreted as requiring that an applicant's experience not only be received under the supervision of an accountant but that it be in the public field of accountancy. If Mr. Tuggle's activities as a lawyer-C.P.A. were limited entirely to tax litigation no one would seriously contend that Duggins, by working with Tuggle or on his staff, would receive the type of experience which accomplished the purpose of the statute. For obvious reasons, when a profession or calling requires special skill or knowledge, and the General Assembly has specified certain qualifications, training, or experience as a condition precedent to the right to practice that profession or calling, the statutory specifications must be complied with strictly. The General Assembly discovered long ago that to allow the Board to accept "equivalent" experience or educational qualifications in lieu of those specified in the statute would not do. A provision permitting such acceptance, once in the law, was excised by 1951 N.C. Sess. Laws, Ch. 844.

The history of legislation in this State mandating experience in the practice of accountancy for an applicant before he becomes eligible for certification as a C.P.A. is ably recounted in the Court of Appeals' opinion in *Duggins v. Board of Examiners, supra* at 135-37, 212 S.E. 2d at 660-61. A recapitulation of that history here would serve no useful purpose. Suffice it to say that from the time the State first began to regulate the profession of accountancy, it has required that applicants for certification have several years' experience in the public practice.

Moreover, after the publication of the opinion of the Court of Appeals in this case, an attempt was made to amend G.S. 93-12(5) so as to render eligible for certification persons, like Duggins, whose experience has been under a C.P.A. not engaged in the public practice of accountancy. Senate Bill 263 (1977) proposed an

amendment which, *inter alia*, would have rewritten the first alternative experience requirement of the statute to read as follows: "An applicant who has received a bachelor's degree, in addition to passing satisfactorily the examinations given by the board, shall have had two years' experience under the direct supervision of a person who holds a certificate as a certified public accountant. . . ."

Senate Bill 263 (1977) received an unfavorable committee report and did not become law. Thus, in all its enactments regulating the certification of public accountant, the General Assembly has clearly manifested its intent that an applicant's experience be acquired *in the field of public accounting*. The continuity in the law requiring such experience remains unbroken, and Board Rule (9)(c)(1) continues to express the intent of G.S. 93-12(5).

Duggins next argues that G.S. 93-12(5), as interpreted by the Board and the Court of Appeals, is unconstitutional on its face because, under the guise of promoting the general welfare, it imposes arbitrary and unnecessary restrictions upon his pursuit of a lawful occupation in violation of N.C. Const. art. I, § 19 and the "due process" and "equal protection" provisions of U.S. Const., amend. XIV.

Duggins bases his argument that he has been denied due process on two grounds. First, he contends that the experience requirement of the statute is invalid because it serves no legitimate public purpose; that it does nothing more than create a compulsory apprentice system by which applicants are forced to make their skills available, for a set period, to certified public accountants, North Carolina public accountants, and the other persons or entities mentioned in the statute. Secondly, Duggins argues that the requirement that an applicant's experience be received from a C.P.A. *in public practice* as opposed to any accountant who holds a certificate (*e.g.*, a C.P.A. engaged in the practice of law) is not rationally related to the permissible legislative objective that only competent, moral, and experienced applicants receive certification.

[5] After careful consideration we hold the requirement that an applicant for certification have two years' experience under the tutelage of an accountant engaged in the public practice of ac-

countancy is rationally related to the legislative purpose of ensuring that only an applicant qualified and prepared to enter the public practice by himself be certified.

The General Assembly reasonably concluded that an applicant would be exposed to a wider range of experience and acquire more benefit therefrom while working under a C.P.A. in public practice than under one with a specialized practice. Since the regulatory statutes envision that most C.P.A.s will enter public practice it is logical that they require applicants to obtain experience in the public arena prior to certification. By clear implication the General Assembly has found that such experience and tutelage will provide, at least potentially, the everyday working knowledge so vital to the competent practice of the complex profession of accountancy. We cannot substitute our judgment for that of the legislature.

In this regard we note that the General Assembly has imposed an experience requirement as a prerequisite to entry into many of the licensed professions and occupations in North Carolina. *E.g.*, G.S. 88-12 (cosmetologists); G.S. 90-61 (pharmacists); G.S. 90-210.25 (funeral directors and embalmers); G.S. 90-270.11(a) (practicing psychologists).

We note further that North Carolina is not unique in requiring applicants for a C.P.A. certificate to have had supervised experience in the practice of public accounting. Reference to the *Accountancy Law Reporter* (CCH) indicates that more than half the states require one or more years of public accounting experience prior to certification. The Board asserts in its brief (citing the *Accountancy Law Reporter*) that "at least 33 states require from one to five years of accounting apprenticeship."

[6]  What we have previously said is also relevant to Duggins' contention that G.S. 93-12(5) is unconstitutional on its face because it violates the equal protection clauses of the federal and state constitutions. In his view the statute creates two classes of applicants—those who have two years' experience with a C.P.A. in public practice and those who have two years' experience with a C.P.A. not in public practice. Certificates are issued to those in the former class but not to those in the latter. Duggins asserts that the classification is unreasonable and unrelated to the State's

permissible objective of ensuring the capability and fitness of the applicants for a C.P.A. certificate.

At the outset we note that this case involves neither a suspect classification nor a fundamental interest specifically guaranteed by the federal or state constitutions. *See San Antonio School District v. Rodriquez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed. 2d 16 (1973); 53 N.C.L. Rev. 551 (1975). The classifications we consider here deal with qualifications prescribed by the State for practitioners of a profession which the State regulates in the public interest. In this area, if the challenged classification bears any reasonable relation to the purpose of the statute it will not be set aside merely because it results in some inequalities in practice. Since this statute does not involve suspect classifications or fundamental interests it need not pass strict judicial scrutiny or the compelling State interest test. *Kotch v. Pilot Comm'rs*, 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093 (1947); *Williamson v. Lee Optical*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed. 2d 491 (1970); *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed. 2d 522 (1975). The North Carolina cases applying the equal protection clause of the state and federal constitutions to challenged classifications have used the same test the federal courts used in the cases cited above. *In re Moore*, 289 N.C. 95, 221 S.E. 2d 307 (1976); *Smith v. Keator*, 285 N.C. 530, 206 S.E. 2d 203 (1974); *Variety Theatres v. Cleveland County*, 282 N.C. 272, 192 S.E. 2d 290 (1972); *State v. Greenwood*, 280 N.C. 651, 187 S.E. 2d 8 (1972); *Guthrie v. Taylor*, 279 N.C. 703, 185 S.E. 2d 193 (1971); *Cheek v. City of Charlotte*, 273 N.C. 293, 160 S.E. 2d 18 (1968).

Thus, in *In re Moore, supra*, this Court said: "The equal protection clauses of the United States and North Carolina Constitutions impose upon lawmaking bodies the requirement that any legislative classifications 'be based on differences that are reasonably related to the purpose of the Act in which it is found'. . . . Such classifications will be upheld provided the classification is founded upon reasonable distinctions, affects all persons similarly situated or engaged in the same business without discrimination, and has some reasonable relation to the public peace, welfare and safety." (Citations omitted.) 289 N.C. at 104, 221 S.E. 2d at 313.

Applying these principles, we conclude that the classifications complained of are reasonably related to the purpose of the legislature and disclose no invidious discrimination. As we have heretofore pointed out, the purpose of Chapter 93 is to protect the public from unqualified accountants by ensuring that only knowledgeable, experienced applicants are issued certificates. An accountant seeks certification for the prestige it engenders and the confidence the public reposes in the designation "C.P.A." Ordinarily an accountant obtains certification for the purpose of holding himself out to the public as a C.P.A. It is logical, therefore, that experience in the "public practice" be deemed a prerequisite to certification. Further, the legislature could reasonably expect the type of experience received with a C.P.A. in public practice or with the Internal Revenue Service or State Auditor to be more varied than the experience available under one who does not hold himself out to the public as an accountant.

Basically Duggins is arguing that it is irrational and unreasonable for the legislature to choose one type of experience as being sufficient to qualify an applicant but to refuse a similar type which *may* be equally satisfactory in result. We considered and overruled this contention in *Guthrie v. Taylor, supra.* In *Guthrie* a teacher challenged a regulation of the State Board of Education governing the renewal of teaching certificates. In upholding the regulation we pointed out that the legislature does not act arbitrarily when it requires that recertification be obtained "by one or more procedures, which may reasonably be deemed likely to produce the desired result, to the exclusion of other procedures which might also be deemed reasonably likely to do so. Such choice between possibly effective procedures is for the rule making authority, not for this Court." 279 N.C. at 714, 185 S.E. 2d at 201. Nor is it material, the Court said, whether the teacher be correct in his contention that the experience he sought to substitute for that required by the regulation is an equally efficacious method for maintaining and improving the quality of instruction. There being a reasonable basis for the regulation issued by the Board of Education in the exercise of the power conferred upon it by the Constitution, this Court is not authorized to substitute its judgment for that of the State Board and invalidate the regulation "on the ground that, in our opinion, some other method for earning the required credits for renewal would be

equally as satisfactory in result." 279 N.C. at 715-16, 185 S.E. 2d at 202.

[7] Duggins' final argument is that, even assuming G.S. 93-12(5) and Rule (9)(c)(1) to be prima facie constitutional they have been unconstitutionally applied to him. Apparently he contends that his experience is exactly the same as that which an applicant working with a C.P.A. in public practice would receive; that he was denied certification solely because Tuggle was not technically engaged in the public practice of accountancy; and that such denial was, therefore, arbitrary.

Even if we were to assume that Duggins' experience was substantially similar to that which an applicant working with a C.P.A. in public practice might receive (and the evidence does not require that conclusion), we would not necessarily conclude that he was unconstitutionally denied his certificate. The equal protection clauses of the state and federal constitutions are not violated by mere "incidental individual inequality." *Martin v. Walton*, 368 U.S. 25, 82 S.Ct. 1, 7 L.Ed. 2d 5 (1961) (*per curiam*); *Phelps v. Board of Education*, 300 U.S. 319, 57 S.Ct. 483, 81 L.Ed. 674 (1937). Whenever any classes are made the lines distinguishing them must be drawn. Of necessity some individuals will fall just short of the line while others will just barely cross it, and the differences between the two groups will often be slight. This result occurs regardless of where the line is drawn. To hold that the equal protection clauses prohibited this type of incidental individual inequality would be to effectively eliminate classification systems. Furthermore, to require an administrative agency, and ultimately the courts, to carefully weigh and balance the qualifications of each applicant who admittedly fails to meet the letter of the regulations, *vis-a-vis* applicants who do, would be an unwarranted drain upon judicial and administrative resources. *Martin v. Davis*, 187 Kan. 473, 357 P. 2d 782 (1960), *appeal dismissed*, 368 U.S. 256, 7 L.Ed. 2d 5, 82 S.Ct. 1 (1961).

Duggins' situation, as he recounted it to the Board, is this: When he graduated from the Business School at Chapel Hill in 1965 after having received numerous scholastic honors and been named Accounting Student of the Year, "he firmly intended to go into public accounting." To further his career in that profession he decided to obtain a law degree. While in law school he spent two summers working for a firm of accountants in public practice.

By the end of his second year he "had developed an interest in the tax area" and had made the decision "to do tax work." In 1968 he graduated with honors from the Law School at Chapel Hill and immediately accepted an offer to join the law firm in which Mr. Tuggle was a partner. "My work under Mr. Tuggle," he said, "would allow me to practice in the tax area."

Thus, Duggins voluntarily and deliberately chose to begin the practice of law instead of working for two years on the field staff of a C.P.A. in public practice. This choice now renders him ineligible for certification, but the Board has not discriminated against him or singled him out. The same rule which now disqualifies him will disqualify all other lawyers similarly situated. If inequality sometimes results from the application of G.S. 93-12(5) and Board Rule (9)(c)(1) it is neither invidious nor arbitrary. There is therefore no question of constitutional dimensions.

The decision of the Court of Appeals reversing the judgment of the trial court is affirmed. The case will be remanded to the Superior Court of Wake County with directions to enter judgment in accordance with this opinion.

Affirmed.