IN THE SUPREME COURT OF NORTH CAROLINA

No. 276A19

Filed 18 December 2020

IN THE MATTER OF: B.L.H.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 24 April 2019 by Judge Marcus A. Shields in District Court, Guilford County. Heard in the Supreme Court on 13 October 2020.

> *Mercedes O. Chut for petitioner-appellee Guilford County Department of Social Services.*
>
> *Parker Poe Adams & Bernstein LLP, by Matthew W. Wolfe, for appellee Guardian ad Litem.*
>
> *Wendy C. Sotolongo, Parent Defender, by J. Lee Gilliam, Assistant Parent Defender, for respondent-appellant father.*

HUDSON, Justice.

Respondent-father appeals from an order entered by Judge Marcus A. Shields in District Court, Guilford County, on 24 April 2019 terminating his parental rights in B.L.H. (Beth),[1] a girl born in November 2010.

Factual and Procedural History

Prior to the termination of respondent's parental rights, Beth was in the custody of her maternal grandparents. This arrangement was the result of a consent order agreed to by Beth's mother and respondent in January 2016. Once, while living

---

[1] A pseudonym is used to protect the identity of the juvenile and for ease of reading.

with her grandparents, Beth was found a quarter of a mile from her grandparents' home unsupervised, unbathed, hungry, and wearing dirty clothes. A home inspection by the Guilford County Department of Health and Human Services (DHHS) revealed that the home was unsanitary and unsafe for Beth. Shortly thereafter, DHHS assumed custody of Beth when the trial court entered a nonsecure custody order and DHHS filed a juvenile petition alleging Beth to be both a neglected and dependent juvenile. Following a hearing on 12 January and 6 February 2017, the trial court adjudicated Beth to be a neglected and dependent juvenile in an order entered on 11 April 2017.

Respondent and Beth's mother have a history of substance abuse problems and criminal convictions. Respondent's criminal record includes several breaking and entering and larceny convictions and one conviction for possession of a controlled substance. While in prison in 2016, respondent entered into a "prison service agreement," which focused on substance abuse, building family relationships, and developing parenting and life skills. However, respondent attended only two substance abuse meetings through the prison's AA/NA program. He wrote to his daughter only once while in prison, and he received numerous infractions for his conduct while incarcerated.

The trial court found that after being released from custody, respondent entered into a new service agreement with DHHS in May 2017. The service agreement required him to address his substance abuse problems by obtaining a

substance abuse assessment, submitting to random drug screens, and refraining from possessing or using illegal drugs. Respondent failed to comply with this aspect of his service agreement. He relapsed into drug use several times over the course of the next year. He tested positive for heroin and suboxone in May 2017, was discharged from a treatment program for a relapse in September 2017, and overdosed on drugs in both October 2017 and January 2018. After this latter overdose, he refused treatment and failed to report the episode to his probation officer.

The service agreement also required respondent to seek and obtain stable employment, income, and housing. Respondent also failed to comply with these aspects of his service agreement. Throughout 2017 and 2018, respondent reported irregular, short-term employment, but he lost his last job after his most recent arrest and incarceration. He also did not provide financial support for Beth. Further, respondent did not obtain safe, stable, and dependent housing. Instead, he reported sporadic living arrangements, including at a halfway house, in a motel, and intermittent stays with friends and his brother, until the time of his most recent arrest in September 2018.

Finally, the service agreement required that respondent improve his parenting and life skills by participating in a parenting/psychological evaluation and completing a parenting class. Respondent did not attend a parenting class or submit to the evaluation. Further, respondent did not visit or contact Beth while she was in DHHS custody. Overall, respondent did not comply with the various requirements of his case

plan: substance abuse, employment, income, housing, parenting skills, and life skills. In September 2018, respondent was again arrested for breaking and entering and returned to prison where he remained at the time of the termination hearing.

The trial court entered a permanency-planning order on 13 June 2018, which designated adoption as the primary plan for Beth, with a concurrent secondary plan of reunification. The trial court concluded that it would be in Beth's best interests for DHHS to seek the termination of respondent's parental rights.

In December 2018, DHHS filed a petition to terminate both parents' parental rights in Beth. The termination hearing was held on 11 March 2019. After hearing the evidence, the trial court rendered its decision to terminate parental rights, stating in open court that "[t]he Court, after hearing sworn testimony from the social worker makes the following findings of fact by clear, cogent, and convincing evidence." The trial court made findings of fact and concluded that grounds existed to terminate respondent's parental rights under N.C.G.S. § 7B-1111(a)(1), (2), (5), and (7). The trial court entered a written order terminating parental rights on 24 April 2019. The written termination order made more detailed findings of fact; however, it did not explicitly state that the grounds to terminate respondent's parental rights were proved by clear, cogent, and convincing evidence. Respondent filed notice of appeal on 3 May 2019.

Analysis

Respondent argues one issue on appeal: that the trial court erred by failing to

affirmatively state the "clear, cogent, and convincing" standard of proof which is required by statute in its written termination order.[2] We disagree and hold that a trial court does not reversibly err by failing to explicitly state the statutorily-mandated standard of proof in the written termination order if, as here, the trial court explicitly states the proper standard of proof in open court at the termination hearing. We affirm the order of the trial court.

I.

The Juvenile Code requires the following process to govern the initial adjudication stage of the two-stage process for termination of parental rights proceedings:

> (e) The court shall take the evidence, find the facts, and shall adjudicate the existence or nonexistence of any of the circumstances set forth in [N.C.]G.S. [§] 7B-1111 which authorize the termination of parental rights of the respondent. . . .
>
> (f) . . . [A]ll findings of fact shall be based on clear, cogent, and convincing evidence.

N.C.G.S. § 7B-1109(e)–(f) (2019). In *In re Montgomery*, 311 N.C. 101 (1984), this Court construed this language "to mean that in the adjudication stage, the petitioner must prove clearly, cogently, and convincingly the existence of one or more of the

---

[2] We note respondent in his brief only challenges one finding of fact made by the trial court as falling short of this standard—the finding that respondent failed to establish paternity through a judicial proceeding. "Findings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal." *In re A.B.C.*, 374 N.C. 752, 758, 844 S.E.2d 902, 907 (2020).

grounds for termination listed in [N.C.G.S. § 7B-1111]." *Id.* at 110, 316 S.E.2d at 252. Only after the petitioner has made the requisite showing may the trial court exercise its discretion to find that termination of parental rights is in the best interests of the child. *Id.*

This Court has not addressed whether the trial court must comply with the requirement of N.C.G.S. § 7B-1109(f) that "all findings of fact shall be based on clear, cogent, and convincing evidence" by affirmatively stating the standard of proof it applies. However, our Court of Appeals has addressed this issue. In *In re Church*, 136 N.C. App. 654, 525 S.E.2d 478 (2000), the trial court terminated the respondents' parental rights in their children but failed to affirmatively state that the findings of fact which it adduced in adjudicating the grounds for termination were based upon clear, cogent, and convincing evidence. On appeal, the respondents argued this was error.

The Court of Appeals held that it interpreted N.C.G.S. § 7B-1109(f) "to require the trial court to affirmatively state in its order the standard of proof utilized in the termination proceeding." *In re Church*, 136 N.C. App. at 657, 525 S.E.2d at 480. The Court of Appeals justified this holding by reasoning that "without such an affirmative statement the appellate court is unable to determine if the proper standard of proof was utilized." *Id.* Furthermore, it noted that the General Assembly had specifically required that the statutory standard of proof be affirmatively stated in the context of delinquent, undisciplined, abuse, neglect, and dependency proceedings, and because

these proceedings "[we]re all contained in a single chapter of the General Statutes and relate to the same general subject matter, [they] construe[d] these statutes together to determine legislative intent." *Id.* (citing *Carver v. Carver*, 310 N.C. 669, 674, 314 S.E.2d 739, 742 (1984)). The Court of Appeals held that although there was competent evidence to support a finding that any of three statutory grounds for termination existed, it vacated and remanded the judgment "for the trial court to determine whether the evidence satisfies the required standard of proof of clear and convincing evidence." *Id.* at 658, 525 S.E.2d at 481.

As an initial matter, respondent urges us to affirm *In re Church*'s reading of N.C.G.S. § 7B-1109(f). Petitioner, in turn, asks us to overrule *In re Church* and hold that trial courts are not required to affirmatively state the clear, cogent, and convincing standard of proof adopted by the statute. As this is a matter of statutory interpretation, we turn to the canons of construction to resolve this issue.

This Court has long held that "[t]he basic rule [of statutory construction] is to ascertain and effectuate the intent of the legislative body." *Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs of Town of Nags Head*, 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980) (citations omitted). "The best indicia of that intent are the language of the statute[,] . . . the spirit of the act[,] and what the act seeks to accomplish." *Gyger v. Clement*, 375 N.C. 80, 83, 846 S.E.2d 496, 499 (2020) (alterations in original) (citing *Coastal Ready-Mix Concrete Co.*, 299 N.C. at 629, 265 S.E.2d at 385). "Legislative purpose is first ascertained from the plain words of the statute." *Elec. Supply Co. of*

*Durham v. Swain Elec. Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991) (citation omitted). "In interpreting an ambiguous statute, 'the proper course is to adopt that sense of the words which promotes in the fullest manner the object of the statute.' " *Duggins v. N.C. State Bd. of Cert'd Pub. Acct. Exmr's*, 294 N.C. 120, 126, 240 S.E.2d 406, 411 (1978) (citing 73 Am. Jur. 2d *Statutes* § 159 (1974)). "A construction which operates to defeat or impair the object of the statute must be avoided if that can reasonably be done without violence to the legislative language." *Elec. Supply Co. of Durham*, 328 N.C. at 656, 403 S.E.2d at 294 (citation omitted). Furthermore, "a statute must be considered as a whole and construed, if possible, so that none of its provisions shall be rendered useless or redundant," because "[i]t is presumed that the legislature . . . did not intend any provision to be mere surplusage." *Porsh Builders, Inc. v. City of Winston-Salem*, 302 N.C. 550, 556, 276 S.E.2d 443, 447 (1981). Finally, "[i]t is a basic principle of statutory construction that different statutes dealing with the same subject matter must be construed *in pari materia* and reconciled, if possible, so that effect may be given to each." *Great S. Media, Inc. v. McDowell Cnty.*, 304 N.C. 427, 430–31, 284 S.E.2d 457, 461 (1981) (citations omitted).

The statute at issue, N.C.G.S. § 7B-1109(f), merely specifies a particular standard of proof in termination-of-parental-rights proceedings—that "all findings of fact shall be based on clear, cogent, and convincing evidence." Petitioner argues that the Court of Appeals' decision in *In re Church* was wrongly decided because the meaning of N.C.G.S. § 7B-1109(f) is plain and it does not require the trial court to

announce the standard of proof it applies in making its findings of fact in the written order or in open court. We disagree because the statute does not, in its own terms, provide whether the trial court must announce its own standard or not. We rely on well-settled canons of statutory construction to resolve this ambiguity.

First, we note that, if possible, we will construe a statute "so that none of its provisions shall be rendered useless or redundant." *See Porsh Builders, Inc.*, 302 N.C. at 556, 276 S.E.2d at 447. Here, to avoid rendering N.C.G.S. § 7B-1109(f) "useless," we must hold that the statute implicitly includes a requirement that the trial court announce the standard of proof it is applying in making findings of fact in a termination proceeding. As our Court of Appeals noted in *In re Church*, "without such an affirmative statement the appellate court is unable to determine if the proper standard of proof was utilized." *See In re Church*, 136 N.C. App. at 658, 525 S.E.2d at 480. If appellate courts cannot determine the standard of proof that was applied, then the statutory provision imposing a heightened burden of proof on trial courts is unenforceable and, therefore, effectively useless. The General Assembly did not intend for this provision to be "mere surplusage." *See Porsh Builders, Inc.*, 302 N.C. at 556, 276 S.E.2d at 447.

Interpreting the statute to require the trial court to make an affirmative statement of the standard of proof also best promotes the object of the statute. We have held "the proper course [of statutory construction] is to adopt that sense of the words which promotes in the fullest manner the object of the statute." *Duggins*, 294

N.C. at 126, 240 S.E.2d at 411. The provision at issue was first enacted in 1969 as part of a statutory scheme creating the proceedings to terminate parental rights, which did not exist at common law. *See In re Clark*, 303 N.C. 592, 607, 281 S.E.2d 47, 57 (1981). The General Assembly revised the Juvenile Code in the Juvenile Justice Reform Act and as part of this comprehensive reform recodified the Termination of Parental Rights Act. *See* An Act to Develop a Plan of Reorganization for the Transfer of the Division of Youth Services of the Department of Health and Human Services and the Division of Juvenile Services of the Administrative Office of the Courts, to Establish the Office of Juvenile Justice, to Amend and Recodify the North Carolina Juvenile Code, and to Conform the General Statutes to the Recodification of the Juvenile Code, as Recommended by the Commission on Juvenile Crime and Justice, S.L. 1998-202, 1998 N.C. Sess. Laws 695, 771 (hereinafter, "Juvenile Justice Reform Act"). The General Assembly announced one policy underlying Article 11, titled "Termination of Parental Rights," as follows:

> The general purpose of this Article is to provide judicial procedures for terminating the legal relationship between a juvenile and the juvenile's biological or legal parents when the parents have demonstrated that they will not provide the degree of care which promotes the healthy and orderly physical and emotional well-being of the juvenile.

N.C.G.S. § 7B-1100(1) (2019). The statute provides that a "further purpose" of the article is "to recognize the necessity for any juvenile to have a permanent plan of care at the earliest possible age, while at the same time recognizing *the need to protect all*

*juveniles from the unnecessary severance of a relationship with biological or legal parents.*" N.C.G.S. § 7B-1100(2) (emphasis added).

N.C.G.S. § 7B-1109(f) advances the purpose of Article 11 in two ways. First, it provides procedural protections for the interests of parents in their children by setting a heightened standard of proof by which a trial court must make findings of fact that show the grounds before determining whether parental rights should be terminated. Second, the provision in question protects children "from the unnecessary severance of a relationship with biological or legal parents" by requiring findings of fact to be "clear, cogent, and convincing" to support grounds for termination. *See* N.C.G.S. §§ 7B-1100(2), 7B-1109(f).

As we noted above, if the trial court is not required to announce the standard it is applying in making findings of fact that support a determination of grounds for termination, either in open court at the termination hearing or in the termination order itself, an appellate court reviewing the decision would be unable to determine if the trial court applied the proper standard of proof in making its findings of fact from the record on appeal. Therefore, an interpretation of N.C.G.S. § 7B-1109(f) that does not require an affirmative statement of the standard of proof from the trial court would defeat two legislative policies underlying the statutory scheme for termination-of-parental-rights hearings—ensuring "judicial procedures" that provide adequate protections for the rights of parents and that also protect children from "unnecessary severance" of the parental relationship. This "construction [would] operate[ ] to defeat

or impair the object of the statute." *Elec. Supply Co. of Durham*, 328 N.C. at 656, 403 S.E.2d at 294.We conclude that requiring the trial court to announce the standard of proof it uses and enabling our appellate courts to review the record for compliance would, in contrast, "promote[ ] in the fullest manner the object[s] of the statute." *Duggins*, 294 N.C. at 126, 240 S.E.2d at 411 (citation omitted).

Finally, we construe different statutes dealing with the same subject matter *in pari materia* and reconcile them, if possible, to give effect to each. *Great S. Media, Inc.*, 304 N.C. at 430–31, 284 S.E.2d at 461 (citation omitted). As the Court of Appeals noted in *In re Church*, other provisions, N.C.G.S. §§ 7B-807 and 7B-2411, provide statutory standards of proof for proceedings involving juveniles. Section 7B-807 governs abuse, neglect, and dependency proceedings and provides that "[i]f the court finds . . . that the allegations in the petition have been proven by clear and convincing evidence, the court shall so state." N.C.G.S. § 7B-807(a) (2019). Section 7B-2411 governs delinquency proceedings and similarly provides that "[i]f the court finds that the allegations in the petition have been proved as provided in N.C.G.S. 7B-2409 [which provides that they be proved "beyond a reasonable doubt"], the court shall so state." N.C.G.S. § 7B-2411 (2019). As all of these proceedings are part of the same statute and legislation and, most importantly, address the same subject matter—heightened standards of proof for juvenile proceedings in which the trial court sits as finder of fact—we construe them together. *See Great S. Media, Inc.*, 304 N.C. at 430–31, 284 S.E.2d at 461 (citations omitted). The plain text of N.C.G.S. § 7B-807 and

N.C.G.S. § 7B-2411 makes clear that the General Assembly intends to require trial courts to state the statutorily-required standard of proof in making its findings of fact. Construing N.C.G.S. § 7B-1109(f) *in pari materia*, we conclude the General Assembly intended the same requirement in termination-of-parental-rights proceedings.[3]

We hold that N.C.G.S. § 7B-1109(f), by providing that "all findings of fact shall be based on clear, cogent, and convincing evidence," implicitly requires a trial court to announce the standard of proof which they are applying on the record in a termination-of-parental-rights hearing. To hold otherwise would make the provision effectively unenforceable and would defeat the purposes of the statutory scheme. The General Assembly could not have intended such a result. Moreover, when construed *in pari materia*, it is clear N.C.G.S. § 7B-1109(f) should be read to require the trial court announce the standard it is applying because the General Assembly required the announcement of a similar heightened standard in delinquent, undisciplined, abuse, neglect, and dependency proceedings under N.C.G.S. §§ 7B-807 and 7B-2411 and a similar requirement is imposed in other instances where the trial court is designated the finder of fact and a statutory standard of proof is required.

## II.

---

[3] Petitioner argues these provisions should not be construed *in pari materia* because they are now located in different subchapters of the statute. **{DSS Br. at p 11}** But this recodification was part of a comprehensive legislative reform which clearly evinces they concern the same subject matter. *See generally* Juvenile Justice Reform Act, S.L. 1998-202, 1998 N.C. Sess. Laws 695 at 695–895.

Although we hold that N.C.G.S. § 7B-1109(f) requires the trial court to announce the standard of proof, respondent asks us to go further and hold a trial court errs if it does not expressly state the standard of proof in the written termination order, even if it announces the correct standard of proof in making findings of fact in open court. This we decline to do. We hold the trial court satisfies the announcement requirement of N.C.G.S. § 7B-1109(f) so long as it announces the "clear, cogent, and convincing" standard of proof *either* in making findings of fact in the written termination order or in making such findings in open court. This rule ensures our appellate courts can determine whether the correct standard of proof was applied from the record on appeal without an undue formalism not reflected in the statutory language.

While this Court is not bound by precedent of our Court of Appeals, we note that this approach is consistent with how the Court of Appeals has interpreted the statutory requirement. In *In re Church*, our Court of Appeals held the trial court in that case "failed to recite the standard of proof applied in its adjudication order and its failure to do so is error"; however, in that case there was no evidence the trial court announced and applied the proper standard of proof elsewhere in the record. *In re Church*, 136 N.C. App. at 658, 525 S.E.2d at 480. In subsequent cases, the Court of Appeals has held that N.C.G.S. § 7B-1109(f) is satisfied even if the standard of proof is not announced in the written termination order, so long as it is announced at the termination hearing and therefore appears in the record on appeal. *See, e.g., In re*

*E.M.*, 249 N.C. App. 44, 56, 790 S.E.2d 863, 873 (2016) ("[T]he failure to state the burden of proof in the written order is not reversible error if the court states the appropriate standard of proof in open court." (citing *In re M.D.*, 200 N.C. App. 35, 39, 682 S.E.2d 780, 783 (2009))); *In re M.D.*, 200 N.C. App. at 39, 682 S.E.2d at 783 ("Although the trial court should have stated in its written termination order that it utilized the standard of proof specified in N.C.[G.S.] § 7B-1109(f), the fact that the trial court orally indicated that it employed the appropriate standard and the fact that the language actually used by the trial court is reasonably close to the wording that the trial court should have employed satisfies us that the trial court did, in fact, make its factual findings on the basis of the correct legal standard.").

III.

In the present case, at the close of the 11 March 2019 termination hearing, the trial court made the following statement in open court: "The Court, after hearing sworn testimony from the social worker makes the following findings of fact by clear, cogent, and convincing evidence." The trial court then made findings of fact and concluded that grounds existed to terminate respondent's parental rights. The trial court subsequently entered a written order terminating parental rights on 24 April 2019. The written termination order, which included detailed findings of fact, did not explicitly state the standard of proof the trial court applied.

We hold that although the trial court failed to state the standard of proof required by N.C.G.S. § 7B-1109(f) in the written termination order, the trial court's

oral statement of the "clear, cogent, and convincing" standard of proof in open court satisfies the statutory requirement. Respondent argues that this case is distinguishable from decisions of the Court of Appeals affirming the order of the trial court when the trial court had referenced but did not expressly state the standard of proof and also stated the correct standard in open court. For instance, in *In re A.B.*, 245 N.C. App. 35, 781 S.E.2d 685 (2016), the Court of Appeals affirmed an order of the trial court when the trial court stated the correct standard of proof for one set of findings of fact in the written order but not others and also stated the correct standard of proof in open court. *In re A.B.*, 245 N.C. App. at 42, 781 S.E.2d at 690. Here, as in *In re A.B.*, the trial court stated the correct standard of proof in open court and "the order does not mention any different standard of proof" and, therefore, nothing in the order indicates the trial court applied the incorrect standard of proof. *See id.* Respondent's argument is not persuasive.

Conclusion

Although it is the better practice for the trial court to state the correct standard of proof in the written termination order as well as in making oral factual findings, the trial court does not err where, as here, it appears from the record that the standard was correctly stated in making findings of fact in open court and nothing in the written termination order indicates that a different standard was applied. We therefore affirm the order of the trial court.

AFFIRMED.