STROUD, Judge.
 

 *37
 
 Respondent-mother appeals order terminating her parental rights to her children, Jacob and Alexis.
 
 [1]
 
 For the following reasons, we affirm.
 

 I. Background
 

 On 3 February 2015, this Court issued the opinion,
 
 In re A.B.,
 
 ---N.C.App. ----,
 
 768 S.E.2d 573
 
 (2015) ("
 
 AB I
 
 "). We summarized the history of the case in our prior opinion:
 

 The Mecklenburg County Department of Social Services, Youth and Family Services ("DSS") initiated the underlying juvenile case by filing a petition on 8 September 2010, alleging the juveniles were neglected and dependent. DSS asserted that respondent had an extensive history of taking Jacob to the emergency room for unnecessary treatment and that she was beginning to show a similar pattern with Alexis. DSS further stated that Alexis had recently been hospitalized because she had consumed some of Jacob's seizure medicine, suggesting that respondent had given the medicine to Alexis. Additionally, DSS reported that respondent was overwhelmed and overly stressed from parenting the juveniles, missed numerous appointments to address Jacob's behavioral issues, was unemployed and struggled financially, and had difficulty following doctors' instructions when providing routine treatments to the children at home. DSS took non-secure custody of the juveniles that same day.
 

 *688
 
 On or about 5 November 2010, DSS entered into a mediated agreement with respondent, establishing a case plan for reunification with the juveniles. Respondent's
 
 *38
 
 case plan required her to: (1) continue participating in an anger management program and demonstrate the skills learned; (2) complete parenting classes and demonstrate the skills learned; (3) maintain legal and stable employment providing sufficient income to meet the juveniles' basic needs; (4) maintain an appropriate, safe, and stable home for herself and the juveniles; (5) maintain weekly contact with her social worker; (6) cooperate with the guardian ad litem; and (7) attend the juveniles' medical and therapy appointments when able to do so. DSS and respondent also agreed to supervised visitation with the juveniles three times per week and a tentative holiday visitation plan.
 

 After hearings on or about 7 January and 17 February 2011, the trial court entered an adjudication and disposition order holding that Alexis and Jacob were neglected juveniles. The court adopted concurrent goals of reunification and guardianship and set forth a case plan for respondent. The trial court adopted the mediated case plan developed by the parties and specifically directed respondent to undergo a complete psychological evaluation, obtain a domestic violence evaluation, and participate in counseling services or therapy.
 

 DSS worked towards reunification of the juveniles with respondent, but in review and permanency planning orders entered 13 May and 31 August 2011, the trial court found respondent needed to further address her mental health and anger management problems. In a permanency planning order entered 19 January 2012, the court found that respondent had made some positive changes in that she was managing her anger, was "emotionally balanced" around the juveniles, and had realized that she needed "batterer's intervention treatment." But the court found that respondent still needed to complete her parenting capacity evaluation, show she could manage her mental health problems, and complete her domestic violence program. The court further found that there were no likely prospects for guardianship or permanent custody of the juveniles and set the permanent plan for the juveniles as reunification or adoption.
 

 *39
 
 On 25 April 2012, the trial court entered a permanency planning order that ceased further efforts towards reunification of the juveniles with respondent, concluding respondent had failed to alleviate the conditions that caused the juveniles to be placed in the care and custody of DSS. The court directed that a Child Family Team ("CFT") meeting be held within thirty days of the order to develop recommendations for a permanent placement for the juveniles, and that DSS refrain from moving to terminate respondent's parental rights until after the court received the recommendations from the CFT. The trial court entered an order on 27 June 2012, directing DSS to proceed with an action terminating respondent's parental rights to the juveniles.
 

 DSS filed petitions to terminate respondent's parental rights to the juveniles on 25 July 2012. DSS alleged grounds existed to terminate respondent's parental rights based on neglect, abandonment, failure to make reasonable progress to correct the conditions that led to the juveniles' removal from her care and custody, and willful failure to pay a reasonable portion of the cost of care for the juveniles while they were placed outside of her home.
 
 See
 
 N.C. Gen.Stat. § 7B-1111(a)(1)-(3), (7) (2013). The trial court heard the petitions on 25 March and 11 April 2013. At the conclusion of the hearing, the court found one ground to terminate respondent's parental rights: failure to make reasonable progress to correct the conditions that led to the juveniles' removal from her care and custody. However, the court concluded that terminating respondent's parental rights was not in the best interests of the juveniles and directed respondent's counsel to prepare a proposed order for the court and circulate the order to all parties.
 

 On 23 September 2013, before the trial court had entered an order on the termination
 
 *689
 
 petitions, DSS filed a "Motion for Relief from Order and Motion to Consider Additional Evidence" pursuant to North Carolina Rule of Civil Procedure 60.
 
 See
 
 id.
 

 § 1A-1, Rule 60 (2013). DSS asked that the trial court reconsider its best interests conclusion based on allegations that respondent had misled the court by providing inaccurate information and
 
 *40
 
 testimony at the termination hearing, and that she had failed to comply with her case plan since the termination hearing. The trial court allowed the motion and held an additional hearing on 1 October and 4 November 2013 in which it allowed DSS to present additional dispositional evidence as to the best interests of the juveniles.
 

 By order entered 27 January 2014, the trial court terminated respondent's parental rights to the juveniles. The Court found that respondent had failed to make reasonable progress to correct the conditions that led to the juveniles' removal from her care and custody, and concluded that it was in the juveniles' best interests to terminate her parental rights. Respondent filed timely notice of appeal.
 

 AB I,
 
 --- N.C.App. at ----,
 
 768 S.E.2d at 574-75
 
 .
 

 In
 
 AB I
 
 , this Court addressed the issues on appeal primarily stemming from inconsistences in the order terminating respondent's parental rights.
 
 See
 

 id.
 

 at ----,
 
 768 S.E.2d at 576-81
 
 . Ultimately this Court determined that
 

 [t]he contradictory nature of the trial court's findings of fact and conclusions of law prohibit this Court from adequately determining if they support the court's conclusions of law that (1) respondent failed to make reasonable progress toward correcting the conditions that led to the removal of the juveniles from her care and custody, and (2) terminating respondent's parental rights is in the juveniles' best interests. Accordingly, we reverse the termination order and remand to the trial court for entry of a new order clarifying its findings of fact and conclusions of law.
 

 Id.
 

 at ----,
 
 768 S.E.2d at 581-82
 
 .
 

 On 5 June 2015, upon remand from this Court, the trial court entered an order terminating respondent's parental rights based upon North Carolina General Statute § 7B-1111(a)(2) for "willfully [leaving] the juvenile[s] in foster care or placement outside of the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal." N.C. Gen.Stat. § 7B-1111(a)(2) (2013). Respondent appeals.
 

 *41
 
 II. Standard of Review
 

 Termination of parental rights proceedings are conducted in two stages: adjudication and disposition. In the adjudication stage, the trial court must determine whether there exists one or more grounds for termination of parental rights under N.C. Gen.Stat. § 7B-1111(a). This Court reviews a trial court's conclusion that grounds exist to terminate parental rights to determine whether clear, cogent, and convincing evidence exists to support the court's findings of fact, and whether the findings of fact support the court's conclusions of law. If the trial court's findings of fact are supported by ample, competent evidence, they are binding on appeal, even though there may be evidence to the contrary. However, the trial court's conclusions of law are fully reviewable
 
 de novo
 
 by the appellate court.
 

 If the trial court determines that at least one ground for termination exists, it then proceeds to the disposition stage where it must determine whether terminating the rights of the parent is in the best interest of the child, in accordance with N.C. Gen.Stat. § 7B-1110(a). The trial court's determination of the child's best interests is reviewed only for an abuse of discretion. Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.
 

 AB I,
 
 --- N.C.App. at ----,
 
 768 S.E.2d at 575-76
 
 (citations, quotation marks, and brackets omitted).
 

 III. Standard of Proof
 

 Respondent first contends that "the trial court stated a standard of proof for only
 
 *690
 
 one finding[,] (original in all caps), but "
 
 [a]ll
 
 [a]djudicatory [f]indings [m]ust [b]e [b]y [c]lear [a]nd [c]onvincing [e]vidence." (Emphasis added.) Respondent argues that the trial court's failure to affirmatively state in the order that
 
 all
 
 of the findings of fact, not just finding of fact 13, were made pursuant to the proper standard of proof was erroneous. We agree that all findings of fact must be supported by clear, cogent, and convincing evidence.
 
 See
 
 N.C. Gen.Stat. § 7B-1109 (2013) ( "[A]ll findings of fact shall be based on clear, cogent, and convincing evidence.")
 
 *42
 
 Just as respondent noted, finding of fact 13 recites the appropriate standard. Finding of fact 13 provides "[t]hat the Department of Social Services has substantially proven the facts that were alleged in paragraphs a-k of the termination of parental rights petition by clear, cogent and convincing evidence." Furthermore, the order does not mention any different standard of proof than as stated in finding of fact 13. Lastly, the trial court stated in its rendition before entry of the first order, "Well, having announced findings previously of facts established by clear, cogent, and convincing evidence that there are grounds to terminate the parental rights of the Respondent-Mother for failing to make reasonable progress under the circumstances, to ameliorate the conditions that brought the children into custody...." No new evidence was taken upon remand, and thus there is no reason to conclude that the trial court used the wrong standard of proof in the current order. This Court has previously determined that
 

 [a]lthough the trial court should have stated in its written termination order that it utilized the standard of proof specified in N.C. Gen.Stat. § 7B-1109(f), the fact that the trial court
 
 orally indicated that it employed the appropriate standard
 
 and the fact that the language actually used by the trial court is reasonably close to the wording that the trial court should have employed satisfies us that the trial court did, in fact, make its factual findings on the basis of the correct legal standard.
 

 In re M.D.,
 

 200 N.C.App. 35
 
 , 39,
 
 682 S.E.2d 780
 
 , 783 (2009) (emphasis added).
 

 Therefore, while we agree it would have been preferable for the trial court to plainly state its standard of proof for
 
 all
 
 of the findings of fact, based upon the language in finding of fact 13, the lack of evidence of an erroneous standard, and the oral rendition stating the appropriate standard, we conclude that the trial court used the correct standard of proof. This argument is overruled.
 

 IV. Finding of Fact 13
 

 Respondent next makes four arguments regarding finding of fact 13. Again, finding of fact 13 states "[t]hat the Department of Social Services has substantially proven the facts that were alleged in paragraphs a-k of the termination of parental rights petition by clear, cogent and convincing evidence." Respondent first contends that paragraphs a-k
 
 [2]
 
 in the
 
 *43
 
 petition to terminate are allegations regarding the ground of neglect and because the trial court failed to find neglect as a basis for termination, it was inconsistent to find the facts supporting neglect by reference to the petition.
 

 Indeed, just as respondent argues, subparagraphs a-k of paragraph 6, allege "[t]hat the respondent parents have neglected the said juvenile as defined in G.S. Section 7B-101(15) in that the respondent parents have failed to provide proper care, supervision, and discipline for said juvenile and have abandoned said juvenile...." Yet when we consider the substance of subparagraphs a-k, they are actually providing a general background of the case, which would be applicable no matter the ground for termination. Subparagraphs a, b, e, and k address the procedural history including the reasons for the initial petition and some prior determinations made by the trial court. Subparagraphs c and d are regarding one of the children's putative fathers. Subparagraph f summarizes respondent's case plan. Subparagraphs g-h note respondent's inconsistency in completing her case plan and complying with a prior court order. Subparagraph i addresses respondent's compliance with her case plan
 
 *691
 
 such as completing a parenting class and regularly visiting the children, and subparagraph j is regarding respondent's lack of employment. Therefore, the trial court could properly rely upon these allegations for determinations other than finding the ground of neglect, since they also provide a relevant background for considering the ground for termination the trial court did find, failure to make reasonable progress. This argument is overruled.
 

 Heavily relying upon
 
 In re O.W.,
 

 164 N.C.App. 699
 
 ,
 
 596 S.E.2d 851
 
 (2004), respondent also contends that the trial court should not have wholesale adopted subparagraphs a-k but instead should have made its own independent determination.
 

 While petitioner is correct that there is no specific statutory criteria which must be stated in the findings of fact or conclusions of law, the trial court's findings must consist of more than a recitation of the allegations. In all actions tried upon the facts without a jury the court shall find the facts specifically and state separately its conclusions of law thereon.
 

 Id.
 
 at 702,
 
 596 S.E.2d at 853
 
 ((citations, quotation marks, and ellipses omitted)).
 

 *44
 
 But this Court has recently noted that it is not necessarily error
 

 for a trial court's findings of fact to mirror the wording of a party's pleading. It is a longstanding tradition in this State for trial judges to rely upon counsel to assist in order preparation. It is no surprise that parties preparing proposed orders might borrow wording from their earlier submissions. We will not impose on our colleagues in the trial division an obligation to comb through those proposed orders to eliminate unoriginal prose.
 

 In re J.W.,
 
 --- N.C.App. ----, ----,
 
 772 S.E.2d 249
 
 , 251,
 
 disc. review denied,
 
 - -- N.C. ----,
 
 776 S.E.2d 202
 
 (2015) (citation and quotation marks omitted).
 

 Upon our examination of the entire record and transcripts, we have been able to determine that the trial court did go through the evidence thoughtfully and did not just accept the petition's allegations. As we noted when this same case was before us previously,
 

 [w]e also understand that the initial drafts of most court orders in cases in which the parties are represented by counsel are drafted by counsel for a party. Unfortunately, in North Carolina, the majority of District Court judges have little or no support staff to assist with order preparation, so the judges have no choice but to rely upon counsel to assist in order preparation.
 

 A.B. I,
 
 --- N.C.App. at ----,
 
 768 S.E.2d at 579
 
 . But the trial court is still ultimately responsible for the contents of the order:
 

 We again caution the trial court that its order, upon which the trial judge's signature appears and which we review, must reflect an adjudication, not mere one-sided recitations of allegations presented at the hearing.
 
 In re J.W.,
 
 --- N.C.App. ----, ----,
 
 772 S.E.2d 249
 
 , 251 (2015) ("[W]e will examine whether the record of the proceedings demonstrates that the trial court, through the processes of legal reasoning, based on the evidentiary facts before it, found the ultimate facts necessary to dispose of the case.").
 

 In re M.K. (I)
 
 , --- N.C.App. ----, ----,
 
 773 S.E.2d 535
 
 , 538-39 (2015).
 

 Although finding of fact 13 certainly includes some "unoriginal prose [,]"
 

 id.,
 

 the trial court made 70 findings of fact. The trial court
 
 *45
 
 referred to the allegations from DSS's petitions by reference to subparagraphs a-k in one of seventy findings, so it is clear that the trial court made an independent determination of the facts and did "more" than merely "recit[e] the allegations."
 
 In re O.W.,
 

 164 N.C.App. at 702
 
 ,
 
 596 S.E.2d at 853
 
 . This argument is overruled.
 

 Respondent then argues that various small portions of subparagraphs a-k were not supported by the evidence. But not even respondent contends that these portions of subparagraphs a-k were essential to the determination made by the trial court to terminate. Instead, respondent argues the allegations of paragraphs "a-k of the termination petition were not supported by clear and convincing evidence. They cannot be used to support termination grounds." Rather than
 
 *692
 
 engage in a lengthy discussion of each and every contested background fact in subparagraphs a-k, which are adopted by Finding of Fact 13, we will agree,
 
 arguendo,
 
 with respondent that finding of fact 13 alone would not be sufficient to support a ground for termination. But there are still 69 unchallenged findings of fact which could support the ground for termination.
 

 Lastly, respondent contends that due to the numerous issues with finding of fact 13 and because it cannot be used to support the ground for termination, "the ground must be reversed." We disagree, since approximately 98.5% of the trial court's findings of fact are unchallenged and therefore binding on appeal.
 
 See generally
 

 In re J.K.C.,
 

 218 N.C.App. 22
 
 , 26,
 
 721 S.E.2d 264
 
 , 268 (2012) ("The trial court's remaining unchallenged findings of fact are presumed to be supported by competent evidence and binding on appeal.") Thus even if we completely disregard finding of fact 13 as respondent requests, the other unchallenged findings of fact may support the trial court's determination. This argument is overruled.
 

 V. Changes in Order on Appeal
 

 Respondent argues that the trial court's findings of fact and conclusions of law in the order on appeal must be consistent with any prior orders and oral renditions. Respondent raises essentially two arguments: (1) the trial court's order on remand from this Court contradicts the oral rendition at the initial hearing and the first order which ultimately resulted from that rendition, and (2) "[t]he [t]rial [c]ourt [e]xceeded [t]he [s]cope [o]f [t]he [r]emand [o]rder." We address both arguments in turn.
 

 Respondent argues that the trial court's second order, currently on appeal, contradicts both the oral rendition after the initial hearing and the first order which was entered after that rendition. But respondent's argument fails to acknowledge that the second order was the result of
 
 *46
 
 this Court's remand and specific direction to the trial court to make its order internally consistent:
 

 If the only problem in the order was one poorly worded conclusion of law, we might be able to determine that this conclusion of law contains a clerical error that could be remedied by a direction to correct it on remand. But the internal inconsistencies of the order go far beyond one sentence. As noted above, there are contradictory findings as to respondent's mental health care and her domestic violence issues[, and] contradiction[s] to its ultimate conclusions regarding grounds for termination and the juveniles' best interests....
 

 See
 

 AB I,
 
 --- N.C.App. at ----,
 
 768 S.E.2d at 579
 
 . The only possible way for the trial court to make a consistent order would naturally require some findings "contradicting" the oral rendition and the first order which resulted in the remand in the first place. The order had to clear up the internal contradictions from the prior order, and this would logically require leaving out some of the findings which the trial court presumably did not intend to include in the prior order, but, thanks to errors in drafting as noted in our first opinion, ended up in the prior order.
 
 See
 
 id.
 

 As this argument ignores the procedural posture of this case, we find it to be without merit.
 

 Respondent next contends that "this Court instructed the trial court to enter 'a new order clarifying its findings of fact and conclusions of law [,]' " and the trial court went far beyond clarification. Respondent specifically directs us to two findings of fact that were so changed upon appeal they went far beyond "clarification," but respondent's argument does not address the sufficiency of the evidence to support the findings but only the fact that the findings in the first order were different than those in the second. When the word "clarifying" is read within the entire context of
 
 AB I
 
 , it is evident that this Court remanded this case for the trial court to make whatever changes necessary to have an internally consistent order. The trial court needed to make the findings which the trial court, in its role as fact-finder and judge of credibility of the evidence, determined were supported by the evidence.
 
 See
 

 AB I,
 
 --- N.C.App. ----, ----,
 
 768 S.E.2d 573
 
 , 575-82. The first order contained findings of fact that did not logically support the conclusions of law.
 
 See
 

 id.
 

 at ----,
 
 768 S.E.2d at 579
 
 . Furthermore, the conclusions of law were inconsistent with one another.
 

 id="p693" href="#p693" data-label="693" data-citation-index="1" class="page-label">*693
 

 See id.
 
 This Court remanded the order for the trial court to draft a consistent order,
 
 see
 

 id.,
 

 --- N.C.App. at ----, ----,
 
 768 S.E.2d at 579-82
 
 , which would necessarily require significant changes
 
 *47
 
 from the first inconsistent order. Respondent notes that "[c]larify means 'to make (something) easier to understand' " and that is exactly what this Court requested, an order that was internally consistent and thus reviewable. We would have hoped, given this instruction in our prior opinion, that the new order now on appeal would have been more carefully drafted, but respondent has not argued that the changed facts are not supported by evidence, and thus this argument is overruled.
 

 VI. Contradictory Findings of Fact
 

 Respondent next contends that "the trial court retained most of its contradictory findings from the prior order." (Original in all caps.) Again, we turn to
 
 AB I
 
 :
 

 It is not unusual for an order terminating parental rights to include both favorable and unfavorable findings of fact regarding a parent's efforts to be reunited with a child, and the trial court then weighs all the findings of fact and makes a conclusion of law based upon the findings to which it gives the most weight and importance.
 

 Id.
 

 at ----,
 
 768 S.E.2d at 578
 
 . Thus, "contradictory" findings of fact are "not unusual" in a termination order because in many cases parents take many positive steps along with many negative ones. Almost always, the parent will present evidence of her progress and improvement, and in many cases, she has actually made some progress. Likewise, the petitioner will present evidence regarding the parent's failures and omissions. The trial court's role is to determine the credibility of all of this evidence and to weigh all of it and then to make its findings of fact accordingly. Although the evidence will be inconsistent, the trial court's ultimate order must be consistent in its findings of fact such that they will support its conclusions of law to come to an ultimate determination.
 
 See
 
 id.
 

 While respondent directs our attention to numerous "inconsistent" findings of fact and argues regarding various changes between the first order and the one currently on appeal, respondent does not actually challenge the sufficiency of the evidence to support the findings of fact nor does respondent make an argument that the findings of fact as currently drafted fail to support the determination that respondent failed to make reasonable progress. North Carolina General Statute § 7B-1111(a)(2) provides that a court may terminate one's parental rights when "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances
 
 *48
 
 has been made in correcting those conditions which led to the removal of the juvenile. N.C. Gen.Stat. § 7B-1111(a)(2) (2013). "[W]illfulness is not precluded just because respondent has made some efforts to regain custody of the child."
 
 In re D.H.H.,
 

 208 N.C.App. 549
 
 , 553,
 
 703 S.E.2d 803
 
 , 806 (2010) (citation and quotation marks omitted).
 

 Although the trial court's findings did note respondent's desire to keep her children and her attempts to correct conditions which led to her children's removal, the trial court also found:
 

 10. The Court identified the primary issues Ms. [Smith] was facing at the time of the children's removal to be issues of Mental Health. The goals for the mother have been developing the capacity, skills and cultivating the support necessary to manage aggression and anger and conflict in a way that did not result in aggressive outbursts that impacted the emotional and physical well-being of the children.
 

 11. That over the course of time the issues of domestic violence with the mother as a primary aggressor became apparent. After the birth of ... [Kyle] ... these issues were required by the Court to be addressed during the time that the children had been in custody prior to filing the termination petitions.
 

 ....
 

 *694
 
 15. That ... [although respondent] has cooperated and began outpatient psycho-therapy with Linda Avery[,] ... Ms. [Smith] was not completely forthcoming about the circumstances that brought the children into custody or the issues of violence in her relationships ... and that Ms. Avery concluded that Ms. [Smith] had not made discernible progress in achieving goals that they had set for treatment.
 

 16. .... despite [her positive desire], the mother voluntarily withdrew herself from services with Ms. Linda Avery contrary to clinical recommendations. Failure to provide complete and honest information about the injuries sustained by [Alexis] to the clinician in addition to failure to provide honest information about the persistence of violence in her relationships, resulted in a treatment plan that was inadequate to assist Ms.
 
 *49
 
 [Smith] [in] alleviat[ing] the conditions of mental illness and aggressive outbursts, ultimately undermining the efficacy and progress of treatment. Ms. [Smith]'s failure to participate consistently in sessions with Ms. Avery further impeded progress in treatment goals.
 

 ....
 

 24. Initially, Ms. [Smith] was not forthcoming about issues of Domestic Violence.... After Ms. [Smith] had been properly assessed and screened for the issues of domestic violence, she was found to be a predominant aggressor who was not appropriate for victim services, but could benefit from batter[er]'s intervention treatment program and was referred to NOVA, a state certified batter[er]'s intervention program[.]
 

 25. That the mother began NOVA treatment on three (3) separate occasions prior to November 2012 and that she was unsuccessfully discharged and terminated in January 2012, May 2012 and September 2012 due to excessive absences.
 

 26. That the mother has been actively engaged in NOVA services since November 2012....
 

 27. That Tim Bradley of NOVA is not providing direct counseling to Ms. [Smith] ..., but has had interactions with ... [her] in his capacity as case manager. In Mr. Bradley's opinion Ms. [Smith] has not developed enough relationship skills to be in an intimate partner relationship with Mr. [Jones]....
 

 ....
 

 35. Ms. [Smith] was the person responsible for the neglect that the Court found at adjudication in the underlying proceedings and has willfully left [Jacob] and [Alexis] ... in foster care for twelve (12) months without showing to the satisfaction of the Court that reasonable progress has been made in alleviating the conditions that brought her children into the custody of the Department of Social Services. These children have been in custody and in various placements for over two years solely because the mother, throughout that time, engaged in a pattern of self-defeating cycles
 
 *50
 
 of dishonesty with therapists, social services professionals, the court and herself. Reunification could not be achieved over that two year period because Ms. [Smith] continued to engage in a pattern of violence with her paramours, family members and caretakers to her children. These children were willfully left in foster care for nearly two years as Ms. [Smith] attempted to conceal unfavorable information from the Court and avoid taking any productive, consistent, and relevant action to alleviate the conditions that brought the children into custody.
 

 ....
 

 38. Through the majority of time that these children have been in custody, ... [respondent] has engaged in a pattern of short progress followed by long periods of regression in mental health and anger management....
 

 *695
 
 39. That ... [respondent] is not currently able to provide for the basic shelter and the children are in need of permanency[.]
 

 ....
 

 41. That when ... Ms. [Smith] first gave testimony at the termination proceedings on 25 March and 11 April 2013, she denied that she had an intimate partner and specifically denied being in a relationship with [Mr. Jones] in early 2013. Ms. [Smith] testified at that time that she had not been in an intimate partner relationship with him in the past four or five months.
 

 42. The respondent-mother has impeached herself, stating not only that they had been in a voluntary intimate relationship, but that they were cohabitating from February 2013 until sometime early in July 2013.
 

 43. That since 11 April 2013 there were four 911 calls for service involving domestic disputes between Mr. [Jones] and Ms. [Smith].
 

 44. That Ms. [Smith] was the primary aggressor in each of those events.
 

 ....
 

 *51
 
 46. That police responded to Mr. [Jones'] residence, but Ms. [Smith] substantially minimized the nature of the conflict and denied telling law enforcement that she had lived at that residence.
 

 47. That Ms. [Smith] denied to Ms. Mitchell that she was living at Mr. [Jones'] residence at any point immediately prior to the police response on 25 July 2013.
 

 48. That only when confronted with collateral information from Charlotte-Mecklenburg Police reports did Ms. [Smith] acknowledge the significant aspects of those conflicts including that she was throwing the personal property of Mr. [Jones] from the balcony of Mr. [Jones'] residence....
 

 49. That during Ms. [Smith]'s third enrollment in batterer intervention classes with NOVA over the period of January through July 2013, the respondent-mother did not disclose the nature of her relationship with Mr. [Jones] or that they were cohabitating.
 

 50. That the respondent-mother did not disclose all of the altercations that occurred between the two of them, but that during her recent participation in NOVA, Mr. Tim Bradley observed Ms. [Smith] to be defensive and to demonstrate no insight in the conduct that occurred on 7 April 2013, 25 July 2013, 1 August 2013, and 22 August 2013.
 

 51. That Mr. Bradley received documentation and explanation about one of the respondent-mother's absences as the result of an illness requiring medical attention. Ms. [Smith] failed [to] justify her other absences and for the third time she was terminated from NOVA for excessive absences.
 

 52. That Ms. [Smith] had not benefited from the information provided in NOVA in the cumulative 21 sessions attended in the three opportunities she had to complete batterer intervention treatment.
 

 53. That Ms. [Smith] continues to require therapy to address causes of her aggressive conduct.
 

 *52
 
 54. That even today Ms. [Smith] minimizes the significance of her outbursts on those four known occasions for which law enforcement was called to respond to domestic disturbances in 2013 between Ms. [Smith] and Mr. [Jones].
 

 55. That Ms. [Smith] was provided with referrals to at least two other programs to address her need for batterer intervention and that despite her ability since receiving those referrals and reports prior to today, she has failed to enroll in such a program and take reasonable steps to address the issues of domestic violence.
 

 56. That the respondent-mother had not been entirely forthcoming with Mr. McQuiston regarding events that had
 
 *696
 
 caused her children to come into custody during their sessions. She had not informed him of her participation in batterer intervention treatment and collateral information subsequently provided to him in the form of Dr. Bridgewater's evaluation. The failure of the respondent-mother to provide information impacted Mr. McQuiston's ability to develop appropriate treatment goals to assist Ms. [Smith] in addressing what he described as self-defeating cycles of the destructive use of anger.
 

 57. The Court is not convinced that the respondent-mother is providing him with the information that he would need to provide her with meaningful assistance to address the conditions of domestic violence and increasing her capacity to manage her anger in a way that would be necessary to [e]nsure or build her capacity to safely and effectively parent her children.
 

 58. That despite the respondent-mother having reported to her clinicians and to the Court she received substantial benefit in stabilizing her mood while complying with prescription psychotropic medications, she has for at least the second time ceased compliance with her prescribed psychotropic medications without the consultation or input from her psychiatrist, therapist, or psychologists.
 

 59. That since 1 April 2013, the respondent-mother has had significant conflicts with the caretakers of her
 
 *53
 
 children around the scheduling and execution of her visitation rights.
 

 60. That those are conflicts created by the respondent-mother's own unrealistic demands on those caretakers or last minute and off-the-schedule visitation.
 

 61. The respondent mother lacked the ability, tools, and interpersonal relationship skills to negotiate those conflicts and resolves the conflicts without the assistance and intervention of DSS.
 

 ....
 

 63. That Ms. [Smith] continues to engage in self-defeating cycles of loss of emotional control and the destructive use of anger in her interpersonal relationships.
 

 64. Ms. [Smith]'s conduct since April 2013 combined with her voluntary cessation of her mental health treatment and medication intervention indicates that self-defeating pattern of emotional volatility and use of anger is unlikely to be ameliorated in the foreseeable future.
 

 65. That Ms. [Smith] has also created significant conflict in her relationship with each of the care providers around visitation and parenting strategies.
 

 ....
 

 67. The [caretakers] are committed to providing a permanent, safe and stable home for [Alexis] and [Jacob]. The [caretakers] have a strong bond to the juveniles and juveniles have a strong bond to ... [them].
 

 ....
 

 70. It is in [Jacob] and [Alexis'] best interests that the parental rights of the respondent-mother ... be terminated.
 

 The trial court then concluded:
 

 2. That there are grounds to terminate the parental rights of the parents in that the parents have willfully left [Jacob] and [Alexis] ... in foster care for more than twelve (12) months without showing to the
 
 *54
 
 satisfaction [of] the Court that reasonable progress has been made in correcting the conditions which le[ ]d the children to be removed....
 

 3. Adoption is the permanent arrangement that is most consistent with [Jacob] and [Alexis]'s needs for a permanent home within a reasonable period of time.
 

 4. It is in [Jacob] and [Alexis'] best interests that the parental rights of the respondent mother ... be terminated[.]
 

 *697
 
 Thus, while the trial court acknowledged and even made numerous findings regarding respondent's progress, the progress was ultimately not enough. It is also clear from the findings of fact that the trial court did not find respondent's evidence of her progress in some areas to be credible. The findings support the conclusions, which in turn support the ultimate determination to terminate. This argument is overruled.
 

 VII. New Evidence
 

 Lastly, respondent contends "the trial court abused its discretion when it did not receive new evidence as to best interest." (Original in all caps.) Respondent argues that "[i]t was not possible for the trial court to formulate a reasoned best interest finding regarding children this young on information which was three years old[,]" particularly in regards to the children's bond with respondent. We agree that with the passage of time, respondent's and the children's circumstances may change, perhaps in ways that would be relevant to the decision to terminate parental rights. But the trial court was under no obligation to consider new evidence on remand, since our prior opinion left the decision of whether to receive additional evidence entirely within the discretion of the trial court.
 
 See
 

 AB I,
 
 --- N.C.App. at ----,
 
 768 S.E.2d at 582
 
 ("The trial court may receive additional evidence on remand, within its sound discretion."). The trial court is in a far better position than this Court to determine whether additional evidence may be useful in a case of this type. In addition, the record does not indicate that respondent made any motions for the trial court to receive additional evidence nor does respondent argue on appeal that any such request was denied. Respondent has not demonstrated how the trial court abused its discretion. This argument is overruled.
 

 *55
 
 VIII. Summary
 

 For the foregoing reasons, we affirm.
 

 AFFIRMED.
 

 Judges DIETZ and TYSON concur.
 

 [1]
 

 Pseudonyms are used to protect the identity of the minors involved.
 

 [2]
 

 It appears that paragraphs a-k are actually subparagraphs of paragraph 6 of the petition, since only one paragraph of the petition has subparagraphs a-k.