IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-422

Filed: 16 June 2020

Randolph County, No. 17 JA 132

In the Matter Of:

A. B.

Appeal by Respondent-Mother from order entered 7 January 2019 by Judge Lee W. Gavin in Randolph County District Court. Heard in the Court of Appeals 26 May 2020.

*Melissa Starr Livesay for Petitioner-Appellee Randolph County Department of Social Services.*

*K&L Gates LLP, by Maggie D. Blair, for Appellee Guardian ad Litem.*

*Robert W. Ewing for Respondent-Appellant-Mother.*

COLLINS, Judge.

Respondent-Mother appeals from the trial court's "Order of Disposition," which maintained placement authority of the minor child with petitioner Randolph County Department of Social Services ("DSS") and required DSS to continue reunification efforts with Mother. We affirm.

## I. Factual and Procedural Background

On 19 October 2011, Amy[1] was born to parents Father and Mother. For the first seven years of Amy's life, the status of her custody and of Father and Mother's ability to provide for Amy's care were repeatedly contested.

Mother suffers from mental illness and mental health issues, including depression, bipolar disorder, borderline personality disorder, and substance abuse issues. On 17 January 2014, when Amy was two years old, Father attempted to give his step-mother, Linda Byrd ("Linda"), temporary custody of Amy. Father stated in writing that Mother had been "involuntarily committed" that same day and that, because he worked 12-hour shifts, he was "not able to give [Amy] the proper care she needs around the clock[.]" Father stated that he wanted Linda to care for Amy until Father and Mother were "able to do so together."

From March 2014 to December 2014, Amy lived with Linda. DSS identified Linda as a safety placement and placed Amy into her care. In 2015, Father and Mother separated; Father was awarded custody of Amy and Mother received visitation. The last time Mother was considered Amy's primary caregiver was in October 2015, and Mother spent approximately 12 hours with Amy between October 2015 and November 2017.

---

[1] We use pseudonyms to protect the identity of the minor child. N.C. R. App. P. 42.

At various times in 2016 and 2017, Amy was placed into the care of her paternal step-great uncle and aunt, Seth and Kelly Smith (the "Smiths"). Amy lived with the Smiths for at least 11 months, and they provided her with food and clothes. The Smiths were temporarily appointed as Amy's temporary guardian in 2016.

On 19 April 2017, the Smiths sought custody of Amy, but custody was awarded to Father. After Father obtained custody of Amy, Mother did not see Amy until September 2017.

On 10 September 2017, the Randleman City Police Department received a report from Amy's daycare concerning her welfare and possible mistreatment. On 11 September 2017, a detective with the police department personally visited Amy's daycare to view photographs of Amy and interview the daycare workers.

Officers went to Father's home to locate Amy and heard a child crying; the officers climbed through an unlocked window, heard a child screaming from the kitchen, and found Amy locked inside a closet. The closet was latched from the outside with a slide dead bolt. Officers found Amy squatting on the floor, wearing dirty clothes, and noticed that there was rat poison, paint, and electrical wiring around her. Her head was shaven, she had injuries on her head, face, and neck, and she was "just skin and bones." Amy was transported to the police department and met with a DSS worker.

On 13 September 2017, DSS filed a juvenile petition alleging that Amy was an abused, neglected, and dependent juvenile. DSS obtained non-secure custody of Amy that same day. Mother was served with the juvenile pleadings that same day.

On 1 March 2018, the case came on for an adjudication hearing. The hearing took place over the course of 6 court sessions: 1, 2, and 23 March 2018; 4 and 25 April 2018; and 15 June 2018. On 11 July 2018, the trial court entered an order adjudicating Amy a dependent, neglected, and abused juvenile.

On 9 and 11 July 2018, the case came on for a disposition hearing. On 7 January 2019, the trial court entered a disposition order continuing Amy in the custody of DSS. On 6 February 2019, Mother gave written notice of appeal.

## II. Discussion

Mother argues that (1) the trial court's finding of fact that she lacked an appropriate childcare arrangement was not supported by competent findings of fact[2] and (2) the trial court's finding of fact and conclusion of law that she either committed felony assault or allowed the felony assault to occur causing Amy to sustain a serious physical injury was not supported by the findings of fact or by the evidence presented at the adjudication hearing.

---

[2] Mother does not contest the adjudication order's conclusions of law that Amy is an abused and neglected juvenile.

*1. Judicial Notice of Prior Orders*

Mother argues that the trial court's findings of fact regarding her lack of an appropriate childcare arrangement were "not based upon competent evidence because the trial court took judicial notice of prior nonsecure orders where the Rules of Evidence are not applied and not based upon the evidence at the adjudication hearing."

Mother has failed to properly preserve this issue for appeal. "In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1). A respondent's failure to object "to the trial court's taking judicial notice of [] underlying juvenile case files . . . waive[s] appellate review" of the issue. *In re W.L.M.,* 181 N.C. App. 518, 522, 640 S.E.2d 439, 442 (2007).

Here, DSS asked the trial court to take judicial notice of "the file in this case" and then specifically asked the court to take notice of a non-secure custody order filed on 6 February 2018. At the conclusion of the adjudication hearing, DSS again asked the trial court to take judicial notice of the prior orders in this case and to "refresh its recollection about those orders." Mother did not object at any time to the requests for judicial notice, and she made no argument that judicial notice should be limited due to the possibility of hearsay evidence being used at earlier hearings.

Mother's failure to raise a timely objection thus waives the issue on appeal. *See In re Isenhour*, 101 N.C. App. 550, 553, 400 S.E.2d 71, 73 (1991) ("Respondent also contends that the court erred in basing these findings on evidence that was not substantive or was hearsay. Respondent failed to raise these objections at trial, however, and must be considered to have waived them.") (internal quotation marks and citation omitted).

*2. Finding of Fact 129 & Conclusion of Law 5*

Mother next argues that the trial court's finding of fact 129 and conclusion of law 5 contained in the adjudication order are not supported by the evidence. Finding of fact 129 and conclusion of law 5 both state:

> The parents and caretaker of the minor child [Amy] inflicted or allowed to be inflicted upon the juvenile a serious physical injury by other than accidental means and/or created or allowed to be created a substantial risk of serious physical injury to the juvenile by other than accidental means.

We review a trial court's order of adjudication to determine "(1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact." *In re Q.A.*, 245 N.C. App. 71, 73-74, 781 S.E.2d 862, 864 (2016) (quotation marks, brackets, and citation omitted). Findings of fact that are supported by competent evidence or are unchallenged by the appellant are binding on appeal. *In re A.B.*, 245 N.C. App. 35, 41, 781 S.E.2d 685,

689 (2016). We review a trial court's conclusions of law de novo. *In re J.S.L.*, 177 N.C. App. 151, 154, 628 S.E.2d 387, 389 (2006).

When determining whether a child is abused, neglected, or dependent, "the determinative factors are the circumstances and conditions surrounding the child, not the fault or culpability of the parent." *In re Montgomery*, 311 N.C. 101, 109, 316 S.E.2d 246, 252 (1984). In *In re J.S.*, 182 N.C. App. 79, 641 S.E.2d 395 (2007), this Court explained:

> The purpose of abuse, neglect and dependency proceedings is for the court to determine whether the juvenile should be adjudicated as having the status of abused, neglected or dependent. . . . In contrast, proceedings to terminate parental rights focus on whether the parent's individual conduct satisfies one or more of the statutory grounds which permit termination. The purpose of the adjudication and disposition proceedings should not be morphed on appeal into a question of culpability regarding the conduct of an individual parent. The question this Court must look at on review is whether the court made the proper determination in making findings and conclusions as to the status of the juvenile.

*Id.* at 86, 641 S.E.2d at 399 (citations omitted).

In the instant case, clear and convincing evidence supports the findings of fact, which in turn support the conclusion of law that Amy is an abused juvenile; Mother concedes on appeal that Amy is an abused juvenile. The trial court's evidence and findings include, inter alia, that: law enforcement officers discovered Amy locked in a closet with no food or water; surrounded by rat poison, paint, and exposed wiring; Amy weighed only 28-pounds at the age of five-years-old, her "legs, buttocks and

cheeks . . . were remarkable for their lack of fat storage," and she had "hanging skin on her buttocks" due to extreme malnutrition; Amy was covered in lanugo, a type of very fine hair which takes months to develop and which is a secondary sign of starvation; Amy suffered from "refeeding syndrome which occurs when individuals have been starved and then been fed" and the body does "not know how to handle the food"; and that Amy developed a form of hepatitis due to the refeeding syndrome. In fact, the trial court found that Amy was at risk of a heart attack and "had only a few more days before it would have been very possible for her to die."

Additionally, the trial court found that Amy is "a victim of child torture" who was locked in a closet, beaten, isolated, and starved on multiple occasions. Portions of Amy's hair had been pulled out, resulting in red, irritated bald patches across her scalp; Amy's body showed "physical signs of being beaten," as she had bruises on her face, scratches on her neck, and abrasions across her face and body; and there was a scratch mark on her ankle from where Father tied stereo wire to Amy's wrist and ankle. The record evidence and findings of fact support that Amy endured a non-accidental, serious physical injury, and thus the trial court properly determined Amy's status as an abused juvenile. *Id.*

As "an adjudication of abuse, neglect, or dependency pertains to the status of the child and not to the identity of any perpetrator of abuse or neglect of the child[,]" *In re S.C.R.*, 217 N.C. App. 166, 170, 718 S.E.2d 709, 713 (2011), and because there

is clear and convincing evidence supporting findings of fact that Amy is an abused juvenile, Mother's argument that finding of fact 129 and conclusion of law 5 are not supported by the evidence is without merit. *See id.* (determining that "the trial court erred when it dismissed the petition against the father on the grounds that he was not involved in any of the actions enumerated in the Petition" because "[a]djudication and disposition proceedings do not involve the culpability regarding the conduct of an individual parent") (quotation marks and citations omitted).

## III. Conclusion

As Mother's failure to raise a timely objection waives the first issue on appeal, and because there was ample evidence to support the trial court's findings of fact and conclusion of law that Amy was an abused juvenile, we affirm the trial court's order.

AFFIRMED.

Chief Judge McGEE and Judge DIETZ concur.